(No. 10963.—Judgment affirmed.)
CITY OF SPRING VALLEY, Appellant, *vs.* THE CHICAGO,
OTTAWA AND PEORIA RAILWAY COMPANY, Appellee.

*Opinion filed February 21, 1917.*

MUNICIPAL CORPORATIONS—*when use of a certain street will be
held to be granted to interurban railway company.* An ordinance
granting certain street rights to an interurban company already
operating in the city over lines acquired from a street railway com-
pany having a license to use a certain street for street railway pur-
poses will be held to grant the use of such street to the interurban
company for commercial railway purposes even though it is not
specially mentioned with the other streets, where the intention of
the city to grant such use is apparent from all the facts and cir-
cumstances, including the language of the ordinance itself.

APPEAL from the Appellate Court for the Second Dis-
trict;—heard in that court on appeal from the Circuit Court
of Bureau county; the Hon. RICHARD M. SKINNER, Judge,
presiding.

C. N. HOLLERICH, and J. L. SPAULDING, for appellant.

CAIRO A. TRIMBLE, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This bill was filed in the circuit court of Bureau county
June 5, 1911, by appellant to enjoin the further use by ap-
pellee of a portion of Peru street, in the city of Spring Val-
ley, alleging that appellee was then obstructing this street
with its tracks, poles, cross-arms, cables and wires for run-
ning its cars, and was running its cars thereon without a
license or authority from appellant; that the same consti-
tuted a trespass, and if permitted would become a continu-
ing nuisance. The bill prayed for a mandatory writ of
injunction and that appellee be restrained from so running
its cars on said street and that said obstructions be removed.
The cause was referred to the master in chancery, who re-

ported the proofs and his conclusions to the effect that the relief should be granted. The circuit court approved the master's report and entered a decree accordingly. The Appellate Court, on appeal, reversed the decree of the circuit court and remanded the cause, with directions to dismiss the bill for want of equity. Thereafter that court granted a certificate of importance, and this appeal was perfected.

The city of Spring Valley was organized in 1886 under the Cities and Villages act. In 1902 the city council granted the right to lay down and operate a street railway over Peru and other streets in said city to the Illinois Valley Traction Company, a corporation organized under the general Incorporation act. (Hurd's Stat. 1916, p. 636.) The charter of said company stated that it was organized for the purpose of building and operating a system of street railways and country interurban railways in the counties of Bureau and LaSalle. This grant of right of way was made by said city upon a petition filed in February, 1902, asking for another license or licenses to build such railway, the petition expressly stating that the traction company had incorporated for the purpose of building, and intended to build, an interurban electric railway line from Ottawa, on the east, through the cities of LaSalle and Spring Valley and ultimately to the city of Princeton. The line had been constructed at this time for some distance west of Ottawa. This license included the disputed strip on Peru street from the eastern corporate limits of the city west about 170 rods to Gunther's curve. Immediately upon the granting of this license the traction company commenced the construction of this railroad, building through the city of Spring Valley and along and on the disputed strip of Peru street and on to the village of Ladd. The railroad commenced its operations thereon about September, 1902, running its cars from the city of LaSalle to the east end of the bridge across Spring creek, and about December, 1902, said bridge being completed across said creek, the line was completed and in op-

eration through said city and on to Ladd. From that date down to the filing of this bill this road was operated as an interurban, commercial, passenger and freight railroad continuously and daily from the cities east and across said disputed strip and through said city. Some time in 1903 the line was extended west from the said city fifteen miles to Princeton. Thereafter the railroad was extended east through the counties of LaSalle, Grundy and Will, and cars were run on a continuous trip from Princeton east through the various cities to the city of Joliet, the eastern terminus, with a spur from Spring Valley north to Ladd.

In June, 1904, a charter was obtained by the Illinois Valley Railway Company, incorporated under the general Railroad law of Illinois, for operating interurban commercial railroads and for the construction of the same from Joliet, through the counties of Will, Grundy, LaSalle and Bureau, to the city of Princeton. On July 1 of that year the Illinois Valley Traction Company transferred all of its rights, properties, privileges and interests in said interurban railway from Ottawa to Princeton to said Illinois Valley Railway Company. By this transfer the Illinois Valley Railway Company acquired all the lines of the railroad in LaSalle and Bureau counties, including the piece of track in question, and thereafter continued the operation of the interurban electric railway through said city and on Peru street until April 15, 1908. On said last mentioned date the Illinois Valley Railway Company conveyed all of its property, right of way, tracks, privileges and licenses to the appellee company. This last mentioned corporation was organized in 1907 under the general Railroad act, for the purpose of constructing a commercial railroad from Ottawa to Princeton and from Chicago to Peoria. Said appellee corporation, after acquiring said railroad, operated its cars over the streets of Spring Valley, including said disputed strip on Peru street, down to the date of the filing of this bill.

On April 24, 1906, the appellant city passed an ordinance which granted to the Illinois Valley Railway Company additional licenses and rights of way, and expressly granted the right to said company "to operate railway cars and coaches thereon for the transportation of passengers, baggage, United States mail, express matter and freight," through said city. The ordinance, while naming certain streets, did not specifically name the disputed strip on Peru street, but in the ordinance we find the following: "It is the intention hereby to afford the said Illinois Valley Railway Company a right of way into the city of Spring Valley from the east, and through the same to the western boundary lines thereof." While this ordinance did not make special reference to the disputed strip on Peru street, it will be noted from the last quoted portion that the city council must necessarily have had said strip in mind, as it was the easterly entrance of said railway company into said city and along said street where the tracks of the Illinois Valley Railway Company at that time were laid, and the road was in operation over the same. The intention of the city authorities to grant the Illinois Valley Railway Company a complete right of way through the city, even though this disputed strip on Peru street was not specifically mentioned, is so clear as to leave little room for doubt. The conclusion that the disputed strip was intended to be included in the right of way through the city of Spring Valley in said ordinance of April 24, 1906, is strengthened by the fact that the city afterward, on April 6, 1910, passed an ordinance granting to appellee the right to build, construct and maintain a side-track from the disputed strip, which is designated therein as a part of its main line, to the property of the St. Bede College, for the purpose of hauling coal, freight and other materials from the main line to the college. During the time since the original ordinance was passed by said city authorities down to the filing of this bill the city council of said city passed many resolutions and

ordinances designed to affect the regulation of appellee's railway and the operation thereof, and until a short time before this bill was filed it is obvious that the city authorities never for a moment questioned the right of said company or its predecessors to operate a commercial railroad over and along said disputed strip. Not long before these proceedings were instituted the records of the city show that the city attorney reported to the city council that there was a flaw in the license ordinance which would permit the bringing of an injunction suit against the railway company with reference to its occupation of this disputed strip. This was followed by the filing of this bill. What caused the dispute between the city authorities and the railway company is not apparent from this record.

Beyond question, the city authorities understood when they granted the original license to the Illinois Valley Traction Company that said company was to operate an interurban railroad for commercial purposes, and although the original ordinance only granted a license for street railway purposes, obviously, from the time of the original grant down to approximately the time this bill was filed, everyone connected with the operation of the railroad and the governmental affairs of the city acted as if the grant was for a commercial railway rather than for a street railway, merely. The additional license was granted to the Illinois Valley Railway Company in April, 1906, as a commercial railway, and the only reason why any question can be raised as to this disputed strip is that it was not specifically mentioned in said grant. We can reach no other conclusion, on all the facts before us, than that said ordinance of April 24, 1906, did grant and legalize the right to operate a commercial railroad through said city, and it was intended to grant such right of way over said disputed strip on Peru street; that by the terms of said ordinance said Illinois Valley Railway Company obtained such right, and that such right was thereafter legally conveyed and trans-

ferred to the appellee company; that at the time of the filing of the bill herein appellee was in the legal possession of the said right; that there is no equity in appellant's bill, and that the Appellate Court was right in directing that it should be dismissed at appellant's costs.

This renders it unnecessary to consider or decide the question whether appellant is prevented, under the doctrine of estoppel *in pais,* as contended by counsel for appellee, under decisions of this court, such as *Chicago, Rock Island and Pacific Railroad Co.* v. *City of Joliet,* 79 Ill. 25, *County of Piatt* v. *Goodell,* 97 id. 84, *Village of Winnetka* v. *Chicago and Milwaukee Electric Railway Co.* 204 id. 297, and *Sanitary District* v. *Metropolitan Elevated Railway Co.* 241 id. 622, from obtaining the relief prayed for in said bill.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*